## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Norma Patrick Hall, #283470, | ) | C/A No.: 1:14-3384-MGL-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Marian Boulware, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Norma Patrick Hall ("Petitioner") is an inmate at the Graham Correctional Institution of the South Carolina Department of Corrections who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's amended and corrected return and amended motion for summary judgment. [ECF Nos. 20, 21].[1] Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if she failed to respond adequately to Respondent's motion by December 23, 2014. [ECF No. 22]. After obtaining an extension [ECF Nos. 26, 27], Petitioner filed a response to the motion [ECF No. 30].

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted and Petitioner's motion for a hearing [ECF No. 31] be denied.

---

[1] Respondent filed her original return and motion for summary judgment on December 17, 2014. [ECF Nos. 14, 15].

I.    Factual and Procedural Background[2]

According to the facts presented by the solicitor and Petitioner during the plea hearing, Petitioner and her six-month-old son left home on Friday, April 20, to cash her husband's paycheck. [ECF No. 14-6 at 23]. Petitioner took her son into the woods on Saturday afternoon on April 21, while she was under the influence of amphetamines and had not slept in days. *Id.* at 60–61. On Monday, April 23, Petitioner called her friend Pamela Eckert and asked Eckert to pick her up from a vacant lot near Petitioner's home. *Id.* at 24. When Eckert picked Petitioner up, Petitioner was dirty, scratched up, half dressed, and did not have her son. *Id.* at 24–25. When Petitioner was questioned about what happened over the weekend, Petitioner stated she became lost when her car got stuck in the woods. *Id.* at 25–26, 29. Petitioner claimed while she was in the woods that her husband and his girlfriend attacked her and killed her son. *Id.* at 25–31. Police and volunteers began searching the wooded area and a volunteer found the child's body on Friday, April 27. *Id.* at 32, 35–38. Following additional questioning, Petitioner changed her story and claimed she left her son alone in the car and when she returned her son was not breathing. *Id.* at 42–43. When Petitioner was informed the autopsy results indicated her son's death was caused by blunt force trauma to the head, Petitioner changed her story again and claimed she was running with her son and she fell and "the impact of [her] body falling upon [her son] killed

---

[2] In her amended and corrected return, Respondent incorporates by reference the PCR appendix and attachments filed with her original return. *See* ECF No. 20 at 5.

him." *Id.* at 51–52, 65. Petitioner denied intentionally injuring her son and she denied shaking him or hitting his head. *Id.* at 52, 56.

Petitioner was indicted by the Dorchester County grand jury during the April 2002 term of court for: (1) homicide by child abuse (2001-GS-18-1126) [ECF No. 14-9 at 53–54] and (2) murder (2001-GS-18-628) [ECF No. 14-6 at 5]. Petitioner was represented by M. Tommy Bolus, Esq. on both charges. *Id.* at 5 *et seq*. On April 10, 2002, Petitioner appeared before the Honorable Diane S. Goodstein to enter a guilty plea to homicide by child abuse. *Id.* at 5–84. Judge Goodstein did not accept Petitioner's guilty plea and the matter was set for trial or further proceedings. *Id.* at 81–84. On April 15, 2002, Petitioner again appeared before Judge Goodstein and entered an *Alford* plea[3] to homicide by child abuse.[4] *Id.* at 129–51. The plea proceeding was recessed until April 17, 2002, at which time Judge Goodstein conducted a sentencing hearing and heard testimony regarding the aggravating and mitigating circumstances related to the homicide by child abuse charge. [ECF Nos. 14-6 at 159–198; 14-7 at 1–200; 14-8 at 1–84]. On April 18, 2002, Judge Goodstein sentenced Petitioner to 40 years' imprisonment. [ECF No. 14-8 at 84].

Petitioner appealed her plea and sentence to the South Carolina Court of Appeals ("Court of Appeals"). *Id.* at 86–100. On appeal, Petitioner was represented by Robert M. Dudek, Assistant Appellate Defender with the South Carolina Office of Appellate Defense.

---

[3] *See North Carolina v. Alford*, 400 U.S. 25 (1970).
[4] Petitioner's murder charge was dismissed pursuant to a plea negotiation. [ECF No. 14-6 at 151–52].

3

*Id.* Attorney Dudek filed a merits brief raising the following issue:  "Whether the judge erred by refusing to consider appellant's diminished capacity due to drug use as a mitigating circumstance pursuant to S.C. Code § 16-3-85(D), since there was evidence, and the judge found, that appellant was on drugs at the time she was in the woods with her child, and the sentencing consideration language of the statute was mandatory?" *Id.* at 89.

On March 1, 2004, the Court of Appeals filed an unpublished decision affirming the sentence. [ECF No. 14-9 at 33–34]. The remittitur was issued on March 18, 2004. *Id.* at 35.

Petitioner filed an application for post-conviction relief ("First PCR") on February 15, 2005 (2005-CP-18-288). *Id.* at 36–44. The PCR application raised the following claim: ineffective assistance of trial counsel in violation of the Sixth Amendment of the United States Constitution and in violation of Article I, Section 14 of the South Carolina Constitution. *Id.* at 37.

A PCR evidentiary hearing was held before the Honorable R. Ferrell Cothran, Jr., on April 23, 2007, at which Petitioner and her PCR counsel, Laura S. Knobeloch, Esq., appeared. *Id.* at 59–119. On October 21, 2007, Judge Cothran filed an order of dismissal. *Id.* at 120–127.

On March 14, 2011, Petitioner filed a second PCR ("Second PCR") application (2011-CP-18-533), claiming her PCR counsel failed to perfect an appeal from the order denying her First PCR. *Id.* at 128–134.

On November 30, 2012, Judge Carmen T. Mullen filed a consent order granting Petitioner a belated appeal of her First PCR pursuant to *Austin v. State*, 409 S.E.2d 395 (S.C. 1991). *Id.* at 142. Petitioner timely appealed from the denial of her First PCR. *Id.* at 144. She was represented on appeal by Tara Dawn Shurling, Esq., who filed a petition for writ of certiorari in the South Carolina Supreme Court raising the following issues:

I.      Did the lower court properly grant *Austin* review on the facts of this case?

II.     Did the lower court err in denying the Petitioner Post-Conviction relief where she met her burden of proof with regard to her allegation that she received ineffective assistance of counsel prior to and during her plea proceeding?

[ECF No. 14-1 at 3].

On July 24, 2014, the South Carolina Supreme Court granted the petition for a writ of certiorari from Judge Mullen's order, dispensed with further briefing, and conducted an *Austin* review of Judge Cothran's order and denied the petition. [ECF No. 14-4]. The remittitur was issued on August 11, 2014. [ECF No. 14-5].

Petitioner filed this federal petition for a writ of habeas corpus on August 20, 2014. [ECF No. 1-4 at 1].[5]

---

[5] The court received and docketed the petition on August 21, 2014. [ECF Nos. 1, 1-4 at 1]. Because Petitioner is incarcerated, she benefits from the "prison mailbox rule." *Houston v. Lack*, 487 U.S. 266 (1988). The date stamp on the envelope containing the petition indicates that Petitioner delivered it to the prison mailing system on August 20, 2014. [ECF No 1-4 at 1].

II.    Discussion

A.    Federal Habeas Issues

Petitioner asserts she is entitled to a writ of habeas corpus on the following grounds:

**Ground One:**    Ineffective Assistance of Counsel

Supporting Facts: (1) Mr. Bolus knew defendant wanted a jury trial. Hall then proceeded once attorney strongly advised after the jury selection was picked (using unprofound and unreasonable tactics of promising a sentence of no more than 20 to 25 years. There was no benefit from the alford plea. The murder charge was dropped but was not an advantage because HBCA is not a lesser included offense of Murder. It carried the same potential sentence. Principal motivation was fear for the defendant to take plea. What's actual basis of plea?; (2) Mr. Bolus failed to question Judge Goodstein about threats made to defendant concerning a life sentence if Hall went to trial.; (3) Mr. Bolus should have asked Judge Goodstein to step down once the new trial started on April 15, 2002. The conflicting issue of a prior working relationship was not discussed again at the bench or with the defendant after the hearing on April 10, 2002, whereas Guilty Plea was not accepted.; (4) Mr. Bolus failed to object to the forty (40) years sentence after Judge Goodstein sentenced Hall; however, he did argue prior to sentencing which does not constitute the State from barring Hall to raise the claims on appeal.; (5) Mr. Bolus rendered ineffective when he failed to object on the measure of criminal intent required under the Statute. Hall previously had two (2) other children by her first marriage to D. L. Patrick of 18 years and there was no prior convictions or arrest of neglect or abuse. This should have been brought into question.; (6) Mr. Bolus was ineffective regarding the seriousness of defendant's drug problem, abuse from current husband, expert witnesses for defense in pediatric care, MUSC hospital stay, Battered Women's care, Substance Abuse experts, her intoxication during the death of Hall's son – was her [substantial] impairment such as to appreciate the criminality of her conduct or to conform her conduct to the requirements of the law? Mr. Bolus also called an expert witness whose testimony undermined the defense. He

had no investigated methods to challenge experts conclusions from State witnesses.

**Ground Two:**     Misconduct or errors by Judge Diane S. Goodstein

Supporting Facts: (1) Prior working relationship – conflict of interest; (2) Judge erred by not considering mitigating circumstances during sentencing phase and all aggravating circumstances to include prior convictions being brought up concerning said crime. Statute requires both mitigating and aggravating must be considered.; (3) Judge Goodstein did not confirm at the April 15, 2002 trial if she should be recused as she had done on April 10, 2002, Hearing.; (4) Trials must be free from coercive or intimidating atmosphere and threats made to defendant concerning life sentence was not acceptable and negotiated misconduct.; (5) Judge Goodstein misquoted the statement from Dr. Joel Sexton (Pathologist) testimony regarding a serious injury by falling from heights such as equated from a second story floor window. His testimony did not reflect that victim's head injury was likewise as if having fallen from the second story window. She also undermined his testimony in regarding the blows to the head to Hall's son being two (2) which would reflect accidental death or being (4) which would reflect intentional death.; (6) Defendant was under the influence of Mental and Emotional disturbance from abuse; Judge Goodstein only gave consideration due to the death of Hall's son and drug use. Judge Goodstein then used her method of analysis to her advantage in closing remarks. There was no intervening causes. This misconduct could be found prejudicial when undue tendencies occur to suggest her decision were made on an improper basis (such as an emotional one).

**Ground Three:**     Ineffective counsel for Post Conviction relief

(1) Ms. Knobeloch failed to raise issues Hall discussed and presented in the PCR application which she deemed necessary for review.; (2) Ms. Knobeloch failed to file the necessary paperwork for an appeal of the Judge's denial of the PCR Hearing Motion resulting in years of absent legal work being carried forth.

[ECF Nos. 1 at 5–8; 1-2 at 1–2].

7

B.    Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

The moving party has the burden of proving summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by Fed. R. Civ. P. 56(c), set forth specific facts showing there is a genuine dispute for trial.

C.    Analysis of AEDPA Bar

1.    AEDPA's Statute of Limitations

Respondent moves for dismissal, alleging that the petition was not timely filed under the one-year statute of limitations created by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), made effective on April 24, 1996. Because Petitioner filed her petition after the effective date of the AEDPA, review of her claim is governed by

8

28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Noland v. French*, 134 F.3d 208, 213 (4th Cir. 1998). The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute provides:

> (d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) **the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review**;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>    (2) **The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection**.

28 U.S.C. § 2244(d) (emphasis added). Subsection (d)(1)(A) provides that the one-year statute of limitations begins to run on the date the petitioner's conviction becomes final, not after collateral review is completed. *Harris v. Hutchinson*, 209 F.3d 325, 327 (4th Cir.

9

2000). In South Carolina, a defendant must file a notice of appeal within ten days of her conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, her conviction becomes final ten days after the adjudication of guilt. *Crawley v. Catoe*, 257 F.3d 395, 398 (4th Cir. 2001). If a defendant files a direct appeal and her conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. *Harris*, 209 F.3d at 328, n.1 (noting conviction becomes final on the expiration of the 90-day period to seek review by the United States Supreme Court from a state's highest court; *cf. Hill v. Braxton*, 277 F.3d 701 (4th Cir. 2002) (discussing procedure for district court's sua sponte timeliness analysis, noting limitations period begins to run when time for filing certiorari in the United States Supreme Court has elapsed).[6]

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." *Taylor v. Lee,* 186 F.3d 557, 561 (4th Cir. 1999). "Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States

---

[6] The *Hill* court did not discuss whether the state court that dismissed the petitioner's appeal was the state court of last resort.

Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." *Crawley v. Catoe*, 257 F.3d at 399.

A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (footnote omitted). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)). Generally, federal courts use Fed. R. Civ. P. 6(a) in computing periods of time under 28 U.S.C. § 2244(d)(2). *Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000).

In 2000, the Fourth Circuit held that the AEDPA's statute of limitations is not jurisdictional, but subject to the doctrine of equitable tolling. The court found that equitable tolling applies only in "those rare instances where—due to circumstances external to the [Petitioner's] own conduct—it would be unconscionable to enforce the limitation against the [Petitioner]." *Harris*, 209 F.3d at 330. In 2010, the United States Supreme Court squarely considered the issue and also held that § 2244 "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010); *cf. Pace v. DiGuglielmo*,

544 U.S. at 418 n.8 (noting Court assumed without deciding that AEDPA's statute of limitations could be equitably tolled for purposes of that decision because respondent assumed it did). The *Holland* Court reiterated its prior holding in *Pace* that the statute would be equitable tolled "only if [the petitioner] shows '(1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way' and prevented timely filing." *Holland*, 130 S. Ct. at 2562 (*quoting Pace*, 544 U.S. at 418).

Under § 2244(d), the state bears the burden of asserting the statute of limitations. *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002). Petitioner then bears the burden of establishing that her petition is timely or that she is entitled to the benefit of the doctrine of equitable tolling. *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003).

2.    Petitioner Timely Filed Her Federal Petition

The undersigned finds Petitioner timely filed her petition in this matter. The AEDPA one-year period of limitation begins to run at the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Because Petitioner did not seek review by the United States Supreme Court, the AEDPA's one-year statute of limitations began running "at the expiration of the time" for seeking direct review in state court. 28 U.S.C. § 2244(d)(1)(A). Petitioner's judgment of conviction therefore became final "when [her] time for seeking review with the State's highest court expired." *Gonzalez v. Thaler*, 132 S. Ct. 641, 653–54 (2012) (clarifying the Court's prior cases concerning 28 U.S.C. § 2244(d)(1)(A)).

Petitioner entered an *Alford* plea on April 15, 2002, [ECF No. 14-6 at 129–51], and was sentenced on April 18, 2002 [ECF No. 14-8 at 84]. Petitioner timely appealed, and the Court of Appeals issued an order of dismissal on March 1, 2004. [ECF No. 14-9 at 33–34].

Petitioner's convictions became final on March 16, 2004—fifteen days after the Court of Appeals dismissed her direct appeal on March 1, 2004—the last date on which she could file a petition for rehearing. *See* Rule 242(c), SCACR ("A decision of the Court of Appeals is not final for the purpose of review by the Supreme Court until the petition for rehearing or reinstatement has been acted on by the Court of Appeals"); *Ham v. Padula*, No. 9:07-432-RBH, 2007 WL 2119862, at *7 (D.S.C. Jul. 17, 2007) (noting that petitioner's state court convictions became final when the state court of appeals dismissed the appeal at petitioner's request (and sent the remittitur)); *see Gonzalez v. Thaler*, 132 S. Ct. 641, 653–54 (2012) ("We now make clear … [that] [t]he text of § 2244(d)(1)(A), which marks finality as of 'the conclusion of direct review or the expiration of the time for seeking such review,' consists of two prongs.… For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the 'conclusion of direct review'—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires. We thus agree with the Court of Appeals that because Gonzalez did

not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired").

Petitioner's filing of her PCR application on February 15, 2005, [ECF No. 14-9 at 36], tolled the one-year limitations period. *See* 28 U.S.C. § 2244(d)(2). When Petitioner filed her PCR application, 336 days had elapsed, leaving 29 days within which Petitioner could timely file a federal habeas petition. The statute of limitations remained tolled until the Supreme Court of South Carolina denied the petition for a writ of certiorari from Petitioner's PCR application on July 24, 2014. [ECF No. 14-4]. Petitioner timely filed this habeas action on August 20, 2014.

> D.     Habeas Corpus Standard of Review

>> 1.     Generally

Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

        2.      Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present her claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit her claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

        a.      Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

    (b)      (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

        (A)    the applicant has exhausted the remedies available in the courts

of the State; or

(B)     (i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if she has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust her state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of her conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a

16

procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[7] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir. 2000) (citing *Matthews v. Evatt,* 105 F.3d 907, 911 (4th Cir. 1997) (internal quotation marks omitted)). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the

---

[7] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

17

state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy,* 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,* 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan.*" 559 S.E.2d at 854. As such, it is an "extraordinary" remedy under *O'Sullivan,* "technically available to the litigant but not required to be exhausted," *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the South Carolina Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals.

### b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed her state remedies and, as such, is procedurally barred from raising the issue in her federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses

18

consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, she is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of [her] claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on [her] case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986), *superseded by statute on other grounds* (AEDPA).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, she has procedurally bypassed her opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the states courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if she can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, she must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must

demonstrate more than plain error.

      E.     Analysis

           1.     Procedural Bar

               a)     Ground One

As an initial matter, Respondent argues Petitioner procedurally defaulted on portions of her claims in Ground One (5) and (6) by failing to present them to the state courts. In Ground One (5) and (6), Petitioner argues counsel was ineffective when he (a) failed to object or discuss the measure of criminal intent required under S.C. Code Ann. § 16-3-85; and (b) failed to call expert witnesses regarding Petitioner's drug use, spousal abuse, victim's failure to thrive diagnosis and treatment (Medical University of South Carolina ("MUSC") and Edisto Pediatrics), and victim's pathology report. [ECF No. 30 at 23–25].    Liberally construed, the only issue in Ground One (5) and (6) that was argued in Petitioner's PCR application was her claim regarding counsel's failure to offer expert testimony (a) from Edisto Pediatrics and MUSC, and (b) regarding the pathology report. *See* ECF No. 14-9 at 43–44.[8] Petitioner failed to raise the remaining issues in her PCR application, and has bypassed her state remedies, accordingly she is procedurally barred from raising these issues in her petition. *See Joseph v. Angelone*, 184 F.3d 320, 328 (4th Cir. 1999) ("In order to avoid procedural default [of a claim], the 'substance' of [the] claim

---

[8] Although Petitioner raised these issues in her PCR application, these claims were not addressed by the PCR court. Because the PCR order was issued prior to November 5, 2007, the undersigned will not consider Petitioner's failure to raise these issues pursuant to Rule 59(e), SCRCP, to effect a procedural bar. *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009).

must have been 'fairly presented' in state court. . . . That requires 'the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.") (*quoting Townes v. Murray*, 68 F.3d 840, 846 (4th Cir. 1995) (*quoting Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994)). Consequently, federal habeas review of Petitioner's claims in Ground One (5) and (6) are barred, except for the claims related to expert witness testimony regarding the pathology report and victim's failure to thrive, absent a showing of cause and actual prejudice, or actual innocence, *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

b)      Ground Two

Further, the portions of Petitioner's claims in Ground Two (5) and (6) that were not addressed by the South Carolina appellate courts are also procedurally defaulted. *Pruitt v. State*, 423 S.E.2d 127. The appellate courts did not rule on Ground Two (5) concerning Judge Goodstein misquoting Dr. Sexton's statement and Ground Two (6) concerning Judge Goodstein's failure to consider Petitioner's mental and emotional disturbance from abuse when determining Petitioner's sentence. The issues in Ground Two (5) and (6) are direct appeal issues that Petitioner did not raise during her guilty plea proceeding, sentencing hearing or in her direct appeal. "To be preserved for appellate review, an issue must be both presented to and passed upon by the trial court." *State v. Watts*, 467 S.E.2d 272, 278 (S.C. Ct. App. 1996); *see also, Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review). As a result, the

22

claims in Ground Two (5) and (6) were not properly presented to the South Carolina appellate courts, which would find them procedurally defaulted if Petitioner attempted to raise them now. Consequently, federal habeas review of Petitioner's claims in Ground Two (5) and (6) is barred absent a showing of cause and actual prejudice, or actual innocence. *Wainwright*, 433 U.S. at 87.

c)      Ground Three

In Ground Three (1), Petitioner alleges her PCR counsel was ineffective for failing to address all her PCR claims during her PCR hearing. In Ground Three (2), Petitioner argues her PCR counsel was ineffective for failing to file an appeal from the denial of her PCR application. Alleged infirmities in a state post-conviction action are not matters that may be addressed in federal habeas actions as a free-standing ground. *Bryant v. State of Md.*, 848 F.2d 492, 493 (4th Cir. 1988). Additionally, because none of the claims in Ground Three (1) and (2) was raised to or ruled upon in Petitioner's PCR appeal, they were not preserved for review. *See, e.g., Coleman,* 501 U.S. 722; *George v. Angelone*, 100 F.3d at 363. Federal habeas review of Petitioner's claims in Ground Three (1) and (2) is barred absent a showing of cause and actual prejudice, or actual innocence. *Wainwright,* 433 U.S. at 87.

2.      Cause and Prejudice

Petitioner has not shown sufficient cause and prejudice to excuse the default of Ground One (5) and (6), Ground Two (5) and (6), and Ground Three (1) and (2). In all cases in which a state prisoner has defaulted her federal claims in state court, federal

23

habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *See* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (holding in order to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Wainwright,* 433 U.S. at 88–91; *Rodriguez*, 906 F.2d at 1159 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent").

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or the defendant's efforts to comply with the State's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate any cause for procedurally defaulting on these grounds. Petitioner had a plea hearing in which she raised no objection, had the opportunity for a direct appeal, a PCR hearing, and a PCR appeal in which to raise these issues. However, she failed to raise them, raise them properly, or preserve the issues for habeas review. Petitioner cannot establish cause and prejudice because she has consistently abandoned opportunities to preserve the issues.

Having failed to establish "cause," the court does not reach whether Petitioner was prejudiced. *See Kornahrens v. Evatt,* 66 F.3d 1350, 1359 (4th Cir. 1995) ("We are mindful . . . that in *Engle* [*v. Isaac,* 456 U.S. 107, 134 n.43 (1982)], after finding that there was no cause for the default, the Supreme Court ended its inquiry, noting that because 'we conclude[d] that these respondents lacked cause for their default, we do not consider whether they also suffered actual prejudice.'"); *see also Breard v. Pruett,* 134 F.3d 615, 620 (4th Cir. 1998) (same). To the extent Petitioner argues her PCR counsel was ineffective [ECF No. 30 at 24], this argument is insufficient to constitute cause for procedural default or undue prejudice from an alleged constitutional violation. Petitioner cannot "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *See Martinez v. Ryan,* 132 S. Ct. 1309, 1318–20 (2012).

In the alternative, Petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, Petitioner must show she is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors she complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* The court's review of the record does not support a showing of actual innocence. In her affidavit opposing summary judgment, Petitioner herself concedes, "[o]verall this evidence does not prove actual innocence . . . ." [ECF No. 30-2 at ¶ 1].

25

The *Alford* plea colloquy reflects Petitioner generally admitted the facts as presented in Section I above, and admitted that she was guilty of reckless indifference. [ECF No. 14-6 at 144–46]. Petitioner cannot show actual innocence, and therefore, the procedural bar applies to Ground One (5) and (6), Ground Two (5) and (6), and Ground Three (1) and (2).

### 3.     Merits Review

#### a)     Ineffective Assistance of Counsel

In Ground One (1), (2), (3), (4) and (6), Petitioner alleges her trial counsel was ineffective when he: (1) advised her to enter an *Alford* plea when she did not receive any benefit from entering a plea and promised Petitioner a sentence of no more than 20 to 25 years; (2) failed to question Judge Goodstein about threats she allegedly made concerning Petitioner receiving a life sentence if she went to trial; (3) failed to ask Judge Goodstein to recuse herself based on a prior working relationship between Petitioner and Judge Goodstein; (4) failed to object when Judge Goodstein sentenced Petitioner to 40 years; (5) failed to offer expert witness testimony from MUSC and Edisto Pediatrics on victim's failure to thrive diagnosis and treatment; and (6) failed to call an expert witness to rebut the pathologist testimony. [ECF Nos. 1 at 5; 1-2 at 1; 30 at 24].

To prevail on her ineffective assistance of counsel claims, Petitioner must show (1) that her trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694

(1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived her "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 562 U.S. at 103–105; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 (*quoting Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). In evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 562 U.S. at 105. In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 103. "If this standard is difficult to meet, that is because it

27

was meant to be." *Id.* at 102. Section 2254(d) codifies the view that habeas corpus is a

"'guard against extreme malfunctions in the state criminal justice system,' not a substitute

for ordinary error correction through appeal." *Id.* at 102–103*, quoting Jackson v. Virginia*,

443 U.S. 307, 332 n.5 (1979)).

At the PCR evidentiary hearing, Petitioner testified she understood the *Alford* plea

meant she was not admitting guilt, "but that the State would have enough evidence if [she

were] brought to trial to convict [her]." [ECF No. 14-9 at 64]. Petitioner alleged she

changed her mind about going to trial because it upset her mother and

> [she] was visited by Mark Hane and Jim Ball at the county jail. They had
> breakfast with Judge Diane Goodstein's husband which would have been
> Arnold Goodstein. And he passed along the message and said that she had
> told him that if [Petitioner] wasted the taxpayers' money, that she would give
> [her] life in prison. . . . That if [Petitioner] went to trial, that she would give
> [her] life.

*Id.* at 66–67.   Petitioner stated that her counsel knew about this conversation and he did

not ask Judge Goodstein about it or ask her to recuse herself. *Id.* at 67. Petitioner testified

she worked with Judge Goodstein when the judge was the county attorney. *Id.* at 68.

Petitioner claimed there was a conflict of interest from the beginning, "but when asked,

[she] went along with it" and could not recall if she told counsel she did not want Judge

Goodstein presiding over her case. *Id.* at 68–69. Petitioner stated her counsel told her he

thought she would get 20 to 25 years if she pled guilty and she was surprised when the

judge sentenced her to 40 years. *Id.* at 69, 71.

Plea counsel testified he met with Petitioner approximately seven times and they discussed her discovery—including the police reports and Petitioner's statements, the facts of the case, the elements of the charges, and potential defenses. *Id.* at 84–87. Counsel stated he thought the solicitor had a strong case on the homicide by child abuse charge, but he believed he had "a pretty good case in terms of mitigation."   *Id.* at 89–90. He stated he did not think they were going to win the case because he did not see a jury acquitting Petitioner on both the murder and child abuse charges. *Id.* at 90. Counsel stated he explained to Petitioner the possible sentences she was facing and he did not promise Petitioner that she would receive a particular sentence, but he did tell her he thought the judge would give her 20 to 25 years. *Id.* at 91–92. Counsel testified Petitioner "was pretty adamant she wanted a trial," however it was Petitioner's decision to plead pursuant to *Alford*. *Id.* at 94–95. Counsel stated he was aware Petitioner had a conversation with Jim Bell concerning Judge Goodstein giving Petitioner a life sentence if she went to trial, but claims he never "heard that Judge Goodstein told Arnold to tell you two guys, Jim Bell and the other gentlemen to tell Mr. Bolus or Norma Hall that she's going to get life." *Id.* at 102–104. Counsel stated he was aware Petitioner and the judge had previously worked together and he did not have a problem Judge Goodstein hearing Petitioner's case, and Petitioner did not object. *Id.* at 105–106.

The PCR court addressed the issue of ineffective assistance of counsel and found trial counsel was not deficient and performed within the reasonable professional norms for a criminal defense attorney. *Id.* at 125. Specifically, the PCR court found:

This Court finds that Applicant's testimony regarding counsel's performance was not credible. Further, this Court finds that trial counsel's testimony was credible and this Court affords it great weight. This Court finds that the transcript and plea counsel's testimony shows that Applicant understood the consequences of a guilty plea, her Constitutional rights, and the possible sentences. This Court finds that trial counsel was not deficient in any aspect of his representation and performed well within reasonable professional norms for a criminal defense attorney. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984); Hill v. Lockhart. This Court further finds the Applicant also failed to carry her burden of proof to show that but for trial counsel's alleged deficient representation she would have not pled guilty but would have insisted on going to trial. Roscoe v. State. Applicant failed further to show prejudice. Additionally, this Court finds the Applicant's guilty plea was knowingly and voluntarily made. Boykin v. Alabama; Pittman v. State. Therefore, the Applicant's guilty plea was not rendered involuntary as a result of the ineffective assistance of counsel. . . . Accordingly, the allegation of involuntary guilty plea resulting from the allegation of ineffective assistance of counsel is denied.

### Miscellaneous Allegations

As to any and all allegations which were or could have been raised in the application or at the hearing in this matter, but were not specifically addressed in this Order, this Court finds that the Applicant failed to present any probative evidence regarding such allegations. Accordingly, this Court finds that the Applicant waived such allegations and failed to meet [her] burden of proof regarding them. Accordingly, they are dismissed with prejudice.

Id. at 125–26.

In her opposition to summary judgment, Petitioner argues her plea was not voluntary "but was a product of duress" due to misinformation from her counsel to include his failure to inform her diminished capacity was not a defense in South Carolina. [ECF No. 30 at 14–15]. Petitioner further claims her hearsay testimony about Judge Goodstein's threats was reliable and argues it was not reasonable for her counsel not to "explain,

question Judge, witness or qualify [the judge's] statement." *Id.* at 20. Petitioner alleges the PCR court unreasonably interpreted the facts surrounding her counsel's failure to address the conflict of interest. *Id.* at 21. Petitioner argues counsel's PCR testimony shows "that he did not confer with [Petitioner] as for her answer or opinion" about whether Judge Goodstein should step down, which she claims shows counsel failed to allow Petitioner to make an intelligent and informed decision. *Id.* Petitioner argues her counsel was ineffective because he failed to object to her 40 year sentence, preventing the sentence from being reviewed on direct appeal. *Id.* at 22. Finally, Petitioner alleges it was improper for counsel not to call the necessary witnesses and claims "the evidence presented by the [expert] witnesses could have impacted the outcome of [Petitioner's] sentencing." *Id.* at 24.

While Petitioner now claims her plea was involuntary, "[r]epresentations of the defendant, [her] lawyer and the prosecutor at [arraignment], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings . . . The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977). Further, statements of the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be, such as ineffective assistance of counsel. *Via v. Superintendent, Powhatan Correctional Center,* 643 F.2d 167, 171 (4th Cir. 1981). The undersigned can find no basis for a reversal of the state court's finding that Petitioner's *Alford* plea was voluntary. *Sargent,* 71 F.3d at 160.

At her plea hearing, Petitioner stated she understood the charges she was facing; that she faced a potential punishment of 20 years to life for homicide by child abuse; that her entering a plea pursuant to *Alford* is treated as if she pled guilty; that her constitutional rights included her right to remain silent, right to a jury trial, right to confront witnesses; that no one had promised her or forced or threatened her to induce the plea; and that she was entering the *Alford* plea voluntarily, of her own free will. [ECF No. 14-6 at 135, 140–41, 148]. The solicitor presented the facts of the State's investigation, *id.* at 23–58, 143–44, with which Petitioner concurred that the evidence the State intended to present at trial was sufficient to establish her guilt beyond a reasonable doubt, *id.* at 145–46.

Petitioner has not provided any evidence she did not intend to enter an *Alford* plea to homicide by child abuse, under oath to the presiding judge, without objection in open court. Rather, the record shows Petitioner was advised by trial counsel, and the consequences of her plea were fully explained to her by her counsel and by the court. The record also clearly shows Petitioner was given every opportunity to change her mind, and she denied she had been coerced or forced to act in any manner concerning her plea. In light of the evidence presented, the undersigned finds the PCR court made reasonable findings of fact and reasonably applied federal law in denying Petitioner's claims.  The PCR court's factual findings are based, in part, on its assessment that Petitioner's testimony was not credible, while plea counsel's testimony was credible. The PCR court's credibility determination is entitled to deference in this action. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) ("[F]or a federal habeas court to

overturn a state court's credibility judgments, the state court's error must be stark and clear."); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Petitioner may overcome this presumption of correctness only by showing "'clear and convincing evidence to the contrary.'" *Wilson v. Ozmint*, 352 F.3d 847, 858–59 (4th Cir. 2003) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 240 (2003)). Petitioner has shown no cause to discount the PCR court's credibility determination. Further, although Petitioner claims that there was no benefit to the *Alford* plea to homicide by child abuse instead of murder, counsel testified at PCR that the benefit included application of the 85% rule for good time credit, not otherwise available for a murder conviction. [ECF No. 14-9 at 93]

Based on the foregoing, the undersigned finds Petitioner has failed to show her trial counsel's performance fell below an objective standard of reasonableness as to Ground One (1), and that if there were an error, that the result of her proceeding would have been different. Petitioner herself testified at PCR that she decided to plead guilty because the threat of a life sentence if convicted at trial "upset [her] mother." [ECF No. 14-9 at 69].

Next, as to Ground One (2), Petitioner stated that her counsel knew about the alleged conversation between former county administrator Mark Hehn and former county attorney Jim Bell regarding Judge Goodstein's threat to impose life if the case went to trial. Counsel himself testified that he never heard that Judge Goodstein told her husband to tell Bell and Hehn to tell counsel or Petitioner that she was going to get life if she went to trial.

33

[ECF No. 14-9 at 103–104]. Rather, counsel testified at PCR that Hehn and Bell intimated to him that knowing Judge Goodstein's reputation "throughout the tri-county area of being very, very rough on certain cases," he had concerns about going forward with a trial on a murder/homicide by child abuse case. *Id.* at 103. Counsel testified that he did not ask Judge Goodstein about the alleged statement. *Id.* at 106–107. As to Ground One (3), Petitioner testified she worked with Judge Goodstein when the judge was the county attorney. *Id.* at 68. Counsel testified that in retrospect it might have been a good idea to take up Judge Goodstein's offer to get off the case, but at the time Judge Goodstein questioned him and Petitioner, he had no reason to believe that the judge was biased or would not act impartially. The record reflects the interaction as minimal—Judge Goodstein would call the county administrator and Petitioner was an administrative assistant who would answer the phone at times. [ECF No. 14-6 at 6]. Petitioner claims there was a conflict of interest from the beginning, "but when asked, [she] went along with it" and could not recall if she told counsel she did not want Judge Goodstein presiding over her case. [ECF No. 14-9 at 68–69].

In light of the attenuated professional connection between Petitioner and Judge Goodstein and the speculative information communicated to counsel concerning Judge Goodstein's alleged comments to her husband to two individuals to counsel, the undersigned finds that the state courts did not err in finding counsel was not deficient in his representation of Petitioner for failing to move for the recusal of Judge Goodstein on Grounds One (2) and (3).

As to Ground One (4), Petitioner stated her counsel told her he thought she would get 20 to 25 years if she pled guilty and that counsel was ineffective in not objecting to the imposition of the 40 year sentence. *Id.* at 69, 71. Counsel testified at PCR that he never promised a specific sentence to Petitioner, but he acknowledged telling Petitioner that he thought the judge would render a sentence of 20 to 25 years. *Id.* at 91. During her plea colloquy, Petitioner testified that she knew she could receive a sentence of 20 years to life for homicide by child abuse, a non-paroleable offense, such that she would have to serve at least 85% of the sentence imposed. [ECF No. 14-6 at 135–137]. She denied that she had been pressured or given any promises to have her plead guilty. *Id.* at 148. The state offered that the only plea negotiation was to drop the murder charge and allow the plea to homicide by child abuse. *Id.* at 151–152. Considering the testimony at PCR and at the plea, the undersigned finds that the state courts did not err in finding counsel was not deficient in Ground One (4) in his representation of Petitioner for not objecting to the sentence imposed.

As to Ground One (5), Petitioner argued her counsel was ineffective in failing to offer expert witness testimony from MUSC and Edisto Pediatrics on victim's failure to thrive diagnosis and treatment. [ECF No. 30 at 24]. As to Ground One (6), Petitioner claimed her counsel was ineffective in failing to call an expert witness to rebut the pathologist's testimony. *Id.* Petitioner alleged it was improper for counsel not to call the necessary witnesses and claims "the evidence presented by the [expert] witnesses could have impacted the outcome of Petitioner's sentencing. *Id.* Petitioner did not offer a

statement or testimony from any expert witnesses during her PCR hearing and is therefore unable to demonstrate that these witnesses would have offered positive testimony. Accordingly, Petitioner cannot demonstrate she suffered prejudice because of her counsel's failure to call expert witnesses during her sentencing hearing. *See Beaer v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) (finding that an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced). The undersigned finds the state court's rejection of Petitioner's allegations was not contrary to and did not involve an unreasonable application of federal law, *see* § 2254(d)(1). Therefore, the undersigned recommends Grounds One (5) and (6) be dismissed.

In sum, Petitioner cannot satisfy the *Strickland* test. Viewing the record in its entirety, the record supports the state court's conclusion that Petitioner understood the consequences of an *Alford* plea, her constitutional rights, and her possible defenses. [ECF No. 14-6 at 132–54]. Petitioner also failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding her ineffective assistance of counsel claims. Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination given the evidence and record before it. Accordingly, Petitioner cannot establish she is entitled to federal habeas relief on any ineffective assistance of counsel claim in Ground One (1), (2), (3), (4) and (6). The undersigned recommends that these claims be denied and dismissed with prejudice.

b)    Judicial Errors

(i)    Ground Two (1), (3), and (4)

In Grounds Two (1) and (3), Petitioner alleges Judge Goodstein erred when she did not recuse herself based on the parties' prior working relationship. [ECF No. 1 at 7]. In Ground Two (4), Petitioner argues Judge Goodstein purportedly threatened to sentence her to a life sentence if she went to trial. *Id.*

The PCR court addressed the recusal issues and found them to be without merit, specifically holding:

> Applicant failed to show the plea judge should have been recused. Applicant failed to present any evidence to show the judge was prejudiced to her case or that she said she would give Applicant life if she proceeded to trial. Applicant's contention is based purely on hearsay statements.

[ECF No. 14-9 at 126].

In response to summary judgment, Petitioner argues she was not consulted regarding Judge Goodstein's conflict of interest. [ECF No. 30 at 26]. Petitioner also argues Judge Goodstein's alleged threats created a coercive and intimidating atmosphere. *Id.* at 29.

As noted *supra*, Petitioner failed to offer any legitimate basis for her counsel to file a motion for recusal. Plaintiff's PCR testimony concerning Judge Goodstein's purported conversation with her husband about Petitioner's sentence was speculative and insufficient to show any suggestion of impropriety by the judge. Further, Petitioner failed to offer any evidence that Judge Goodstein showed any sign of bias at Petitioner's guilty plea and

37

sentencing hearing. Finally, Petitioner admitted in her PCR testimony that she could not recall if she ever informed her counsel that she did not want Judge Goodstein presiding over her case. Petitioner failed to establish the PCR court's rejection of her allegations concerning Judge Goodstein's recusal was contrary to and involved an unreasonable application of federal law. Petitioner has also failed to show the PCR court's findings on this issue were based on an unreasonable determination of the facts. Accordingly, the undersigned recommends dismissal of Grounds Two (1), (3) and (4).

(ii)    Ground Two (2)

In Ground Two (2), Petitioner claims Judge Goodstein erred by not considering all the mitigating and aggravating circumstances during the sentencing phase. [ECF No. 1 at 7].

On direct appeal, the Court of Appeals denied Petitioner's claim that the trial court failed to consider her diminished capacity due to drug use as a mitigating factor during sentencing. [ECF No. 14-9 at 33–34]. The Court held:

> Hall argues the circuit court erred as a matter of law by failing to consider diminished capacity resulting from her drug use during her sentencing phase. In fact, the trial judge clearly considered that diminished capacity resulting from drug abuse may be a mitigating factor, but determined it was not so in the present case. Moreover, Hall did not object when the circuit court imposed its sentence. Thus, the issue of the sentence is not preserved for our review. State v. Johnston, 333 S.C. 459, 462, 510 S.E.2d 423, 425 (1999) (stating that a challenge to sentencing must be raised at trial, or this issue will not be preserved for appellate review).

*Id.* at 34.

In her opposition to summary judgment, Petitioner alleges Judge Goodstein erred by

38

refusing to consider Petitioner's drug use in mitigation. [ECF No. 30 at 27]. Petitioner

states Judge Goodstein should have found several mitigating circumstances and factors

> due to the expert testimony of Dr. Schwart[z]-Watts' concerning the
> defendant's mental state at the time of the child's death, such as but not
> limited to capacity to conform conduct to the requirements of the law was
> beyond [substantially] impaired, the crime was committed while Hall was
> under the influence of extreme mental and/or emotional disturbance.

*Id.* Petitioner reviews Dr. Schwartz-Watt's testimony and argues Judge Goodstein's refusal

to consider the mitigating evidence was constitutional error and highly prejudicial. *Id.* at

27–28.

Respondent argues Petitioner's Ground Two (2) does not state a claim cognizable in

federal habeas corpus because it "is a matter of state procedure concerning consideration of

matters during sentencing and the weight the state court should have given them." [ECF

No. 20 at 32–33]. The undersigned agrees. A challenge to the application of state law is not

cognizable in a federal habeas action. *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991)

("We have stated many times that 'federal habeas corpus relief does not lie for errors of

state law.' . . . Today, we reemphasize that it is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions. In conducting habeas review,

a federal court is limited to deciding whether a conviction violated the Constitution, laws,

or treaties of the United States.") (citations omitted). The undersigned recommends

Petitioner's Ground Two (2) be denied and dismissed with prejudice.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Respondent's amended motion for summary judgment [ECF No. 21] be granted. The undersigned also recommends that Petitioner's motion for an evidentiary hearing [ECF No. 31] be denied.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 23, 2015                                     Shiva V. Hodges
Columbia, South Carolina                United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.   Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.   "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*   Fed. R. Civ. P. 6(a), (d).   Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**   28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).